S. DAVIDSON, Appellee, v. L. GINSBERG, Appellant.

FIXTURES: Trade Fixtures—Damages as Bearing on Intent. Electric wiring may not be removed by a tenant from a building as a trade fixture, when such removal would cause substantial damage to the building and damages disproportionate to the value of the said wiring; and especially when there is affirmative evidence that the tenant had no thought of removing the wiring until he started to remove from the building.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

MARCH 8, 1921.

SUIT in equity to enjoin the removal of alleged trade fixtures from a building owned by the plaintiff and occupied by defendant as a tenant. There was a decree granting partial relief to the plaintiff, and the defendant appeals.—*Affirmed.*

*Dunshee & Brody,* for appellant.

*J. A. Ralls* and *Nourse & Nourse,* for appellee.

EVANS, C. J.—The defendant, as a tenant, occupied for some years a certain business building as a furniture store on West Walnut Street in the city of Des Moines. For the purpose of his business, he installed in the second and third stories thereof cer-

tain partitions and shelving and electric wiring. During the tenancy of the defendant, the plaintiff became the purchaser of the property, and is now the owner thereof. At the expiration of his lease, the defendant claimed the right to remove the above-described property as trade fixtures, and was about to remove them when temporarily enjoined by this suit. The plaintiff claims that he had no notice of the defendant's ownership of the fixtures, nor any reason to believe that they were not a part of the building that he was buying. He avers, also, that they cannot be removed without substantial injury to his property. A temporary injunction was issued at the beginning of this suit and served upon the defendant. Before the service of the writ, however, the defendant had removed the partitions and the shelving. In the final decree, the trial court found that the defendant was entitled to remove such partitions and shelving as trade fixtures. The decree, however, permanently enjoined the removal of the electric wiring. This appeal is prosecuted for the purpose of establishing the right of the defendant to remove such wiring. The method of the attachment of such improvement to the building is described in the following extract from the testimony:

"The electric wires were all encased in metal pipes that run along the ceiling and down the walls. On the third floor, they were fastened to the open ceiling joists by nailing; on the second floor, I cannot say whether they were nailed or screwed on. As to the junction boxes on the side walls, they were fastened with a kind of staples, and the plaster was around the boxes. The boxes were nailed onto the ceiling, and the plaster was around the boxes, coming over the side about one-half inch."

The defendant offers to repair all damage which he may cause by the act of removal. This offer, however, is not, of itself, determinative of his right. The question whether this improvement became a part of the realty or whether it remained as a removable trade fixture is, in the first instance, a question of intent. If the fixture be so attached that it cannot be removed without substantial damage to the property, it tends to show an intention to make the same a part of the realty; so, also, if the damage caused by its removal is disproportionate to the value of the fixture itself, it tends in the same direction. Though the doctrine

of trade fixtures is applied liberally to the protection of a tenant in the right of removal, yet the tenant may not disregard the question of substantial damage to the property, and insist upon a naked right of removal.  That substantial damage would be caused to the plastering of this building by the removal of the wiring and its appurtenances is quite evident from the record. What value the wire would have after its removal does not appear.  The defendant did testify that the wiring was worth $300 or $400.  This, however, appears to have had reference to its value in place.  We can hardly shut our eyes to general knowledge and observation that used wire separated from its place of original use has little more than junk value.  Furthermore, the defendant testified:

"I first thought about taking this wiring out when I started to move."

Upon the whole record, the inference is fairly warranted that the improvement was not originally intended as a trade fixture, and that the removal of the same at the present time would work a damage to the building greatly disproportionate to the value of the wire.

It is urged in argument that there are certain chain drops suspended from the conduits which can be removed without any damage.  The difficulty here, however, is that the pleadings disclose no reference to such chain drops.  We should not be warranted in reversing the trial court for its failure to allow an item that was not referred to in the pleadings, and to which the attention of the court was in no manner specifically directed.  The fact appears in the record only by a casual reference in the testimony.  We reach the conclusion that the decree entered below should be affirmed.—*Affirmed.*

WEAVER, PRESTON, and STEVENS, JJ., concur.

DE GRAFF, J., took no part.